IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

SAMUEL CALDWELL                                                                                                  PLAINTIFF

v.                            Civil No. 6:24-cv-06072-SOH-MEF

WARDEN WALT WHITE, ADMIN
REVIEW OFFICER ABIGAIL MARROW,
DIR AND TEMP ARO SHAWN WEHUNT,
DEPUTY DIRECTOR SYRNA BOWERS,
LT. BAKER and MAJOR OTTS (All of ACC
Omega Unit)                                                                                                      DEFENDANTS

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed under 42 U.S.C. § 1983.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court for preservice screening pursuant to 28 U.S.C. § 1915A.[1] Under § 1915A, the Court must screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).

### I.     BACKGROUND

Plaintiff filed his Complaint on May 22, 2024.  (ECF No. 1).  On May 28, 2024, the Court entered an Order directing Plaintiff to submit an Amended Complaint to correct deficiencies in his initial Complaint.  (ECF No. 8).  Plaintiff did so on June 3, 2024.  (ECF No. 9).

Plaintiff's claims center on his incarceration in the Arkansas Division of Community Correction ("ACC") Omega Unit.  (ECF No. 9).  For his first claim, Plaintiff alleges that from

---

[1] Enacted as part of the Prison Litigation Reform Act ("PLRA").

1

February 13, 2024, through May 20, 2024, the EMOS kiosk system was down, causing Plaintiff difficulty in communicating with medical staff. (*Id*. at 4-5). Plaintiff alleges this resulted in miscommunications which resulted in him not receiving his "antibiotics/Bactrim[2]" for a "week long spread" and in missing a surgery appointment on April 4, 2024. (*Id*. at 5). Plaintiff does not indicate what medical condition or conditions required antibiotics/Bactrim or surgery. Plaintiff names Defendants White, Bowers, and Aunspaugh[3] for this claim. (*Id*. at 4). He alleges that Defendant Aunspaugh told him the kiosk issue was "not medical's problem." (*Id*. at 5). Defendants White and Bowers found his grievances concerning the functionality of the kiosk system to be without merit. (*Id*.). Plaintiff proceeds against all three Defendants in their official and individual capacities. (*Id*.). For his official capacity claim, Plaintiff merely alleges that all inmates "are to be provided access to medical personnel via Kios EMOS systems." (*Id*.).

For his second claim, Plaintiff names Defendants Marrow and Baker. (ECF No. 9 at 6). He indicates the dates of occurrence for this claim are January 22, 2024, through April 30, 2024. (*Id*.). He alleges that when he was assigned to the 4 Barracks on January 22, 2024, there was no fire evacuation diagram posted in the Barracks. (*Id*.). Plaintiff states he submitted a grievance about the lack of diagram, but it was found to be without merit on April 13, 2024. (*Id*.). He alleges one was posted on April 30, 2024. (*Id*.). Plaintiff alleges this was a direct threat to his safety because he walks with a cane. (*Id*.). Plaintiff proceeds against both Defendants in their official and individual capacities. (*Id*.). To support his official capacity claim, Plaintiff alleges that fire safety code and ADC policy both require that evacuation plans must be always posted in the

---

[2] Bactrim is a brand name for a combination of two antibiotics. Available at www.Drugs.com (last accessed July 25, 2024).
[3] Kelly Aunspaugh was not listed in the section of the form intended for naming defendants but was instead listed in the text of this claim alone. As the claim will be dismissed, Aunspaugh will not be added to the docket for this case.

2

barracks. (*Id*.). Plaintiff does not allege that he suffered any injury because of the missing fire evacuation plan.

For his third claim, Plaintiff alleges that Defendants White and Otts failed to provide a safe clean environment free from physical and verbal abuse on January 22, April 13, April 30, May 5, and May 20, 2024. (ECF No. 9 at 7). He bases this claim on a leaky sink. (*Id*.). Plaintiff alleges he filed a complaint about the sink and maintenance worked on it, but it continued to leak. (*Id*.). He alleges another inmate struck him in the face for using the sink. (*Id*.). Plaintiff does not indicate how he was struck or any injuries from the incident. He further alleges that the sink posed a fall threat to him because he walks with a cane, but he does not state that he fell. (*Id*.). Plaintiff proceeds against these Defendants in their individual and official capacities. (*Id*.). For his official capacity claim he alleges that Defendants failed to provide "a safe clean environment free from physical and verbal abuse." (*Id*. at 8-9.). Plaintiff fails to provide any facts as to any alleged verbal abuse.

For his fourth claim, Plaintiff alleges that he is an indigent inmate and was denied extra postage in the form of extra envelopes several times for another case in this District, Case No. 6:24-cv-06051. (ECF No. 9 at 10). Plaintiff alleges he grieved the lack of extra envelopes and was refused extra envelopes. (*Id*.). Plaintiff alleges the lack of envelopes "posed a direct obstruction in proceeding in my civil complaint, and in taking an active part in my health care." (*Id*.). The Court takes judicial notice that Plaintiff's case, *Caldwell v. Bowers*, Case No. 6:24-cv-06051, was filed on April 12, 2024, and is an active case in this District with a pending Motion to Dismiss by several Defendants.

Plaintiff checked the section of the Complaint form to indicate that he only sought "other relief." However, he asks for monetary damages in the amount of $1,000 per day for having been

subjected to the indignities and inadequate conditions of confinement. (ECF No. 9 at 9). He also asks for the appointment of counsel as he has two open cases in this District. (*Id.*). Finally, he seeks a "TRO from this facility," because he has been refused "separation from staff members named" causing a direct compromise in his health care and the ability to proceed in the discovery phases of his cases. (*Id.*).

## II.   LEGAL STANDARD

Under § 1915A, the Court is obliged to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987); *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal

4

framework." *Jackson*, 747 F.3d at 544 (cleaned up).  However, the complaint must still allege specific facts sufficient to support a claim.  *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III. ANALYSIS

#### A. Official Capacity Claims

All Defendants named in the case are identified as employees of the Arkansas Division of Community Correction ("ACC") Omega Center.  As such, Plaintiff's official capacity claims against them are subject to dismissal.  "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work." *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998).  Thus, Plaintiff's official capacity claims against Defendants are claims against the ACC. *Id*.  The ACC is an Arkansas state agency.  *See Fegans v. Norris*, 351 Ark. 200, 206, 89 S.W.3d 919 (2002).  States and state agencies are not "persons" subject to suit under § 1983.  *Howlett v. Rose*, 496 U.S. 356 (1990); *Will v. Mich. Dept. of State Police*, 491 U.S. 58 (1989); *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008).  "This bar exists whether the relief sought is legal or equitable." *Williams v. Missouri*, 973 F.2d 599, 599-600 (8th Cir. 1992) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)).  "Congress did not abrogate constitutional sovereign immunity when enacting the law that was to become section 1983." *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 342 (1979)).

The Defendants in this case are all employees of the Arkansas Division of Community Correction.  As such, the official capacity claims against them for monetary damages are barred by sovereign immunity.

#### B. Claim One – Denial of Medical Care

Plaintiff fails to state a plausible denial or delay of medical care claim based on technical issues with the inmate kiosks.  In prisoner litigation, courts in the Eighth Circuit analyze denial of

5

medical care claims under the deliberate indifference standard of the Eighth Amendment. *See e.g., Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020) (pretrial detainee has the same rights to medical care under the Due Process Clause as an inmate has under the Eighth Amendment). The Court therefore examines Plaintiff's claims under the Eighth Amendment's deliberate indifference standard. *Id*.

To succeed on this type of claim, a Plaintiff must demonstrate: (1) that he had an objectively serious medical need, and (2) that the Defendants actually knew of, but deliberately disregarded, that serious medical need. *See Ivey v. Audrain Cty., Mo.*, 968 F.3d 845, 848 (8th Cir. 2020). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (internal quotations omitted). "To demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the [detainee's] health." *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018) (internal quotations and citations omitted). The Eighth Circuit has stated that this "onerous standard requires a showing more than negligence, more than even gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Thompson v. King*, 730 F.3d 742, 747 (8th Cir. 2013) (internal quotations and citations omitted).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. Cty. of*

6

*Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis[,]" *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (internal quotations omitted), unless the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald*, 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999)); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (holding a three-week delay, "coupled with knowledge of inmate-patient's suffering, can support a finding of an Eighth Amendment violation").

Here, Plaintiff fails to allege sufficient facts to satisfy either prong of the deliberate indifference test. Plaintiff alleges that he did not receive antibiotics for a week and missed a scheduled surgery due to a miscommunication caused by the inmate kiosk request system. Plaintiff fails, however, to identify any medical condition diagnosed by a medical professional or to identify the surgery needed. Plaintiff also fails to describe a medical need that would be obvious to a layperson. He fails to allege that he could not verbally make a sick call or medical request in person without the kiosk. Finally, he fails to allege that any prognosis for any medical condition was adversely affected by the delay in receiving either the antibiotics or the unidentified surgery. *See Martin v. Sargent*, 780 F.2d at 1337 (even a *pro se* plaintiff must still allege specific facts sufficient to support a claim); *Bender v. Regier*, 385 F.3d 1133, 1138 (8th Cir. 2004) (An inadvertent failure to provide medical care caused by a miscommunication, alone, does not establish an Eighth Amendment violation.).

Thus, Plaintiff fails to allege sufficient facts to support a denial or delay of medical care claim based on technical issues with the inmate kiosks.

### C. Claim Two – Failure to Adhere to Policy

Plaintiff fails to state a plausible claim based on an alleged failure to follow fire safety code and ADC policy because a fire evacuation diagram was not posted in the barracks. It is well settled that prisoners do not have a constitutional right to enforce compliance with internal prison rules or regulations. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("there is no federal constitutional liberty interest in having ... prison officials follow prison regulations"); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) ("there is no § 1983 liability for violating prison policy"). Further, Plaintiff does not allege that he was harmed by the lack of a fire evacuation diagram. Because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual non-*de minimis* injury to implicate the Eighth Amendment. *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

Thus, Plaintiff fails to state a plausible claim based on an alleged failure to follow fire safety code and ADC policy because a fire evacuation diagram was not posted in the barracks.

### D. Claim Three – Conditions of Confinement and Failure to Protect

Plaintiff fails to state any plausible claims based on a leaking sink in his barracks. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) (citation omitted). The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. Detention centers must provide pretrial detainees with "reasonably adequate sanitation, personal hygiene, and laundry privileges . . .." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) (quoting *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989)). The Eighth Amendment also prohibits punishments that deprive inmates of the

minimal civilized measure of life's necessities. *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996); *see also Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) ("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same.").

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels*, 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

As is the case with all Eighth Amendment claims, a prisoner must suffer some actual injury to receive compensation, and this injury must be greater than *de minimis*. *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

Here, Plaintiff alleges only that a sink in the barracks leaked. He fails to indicate the extent or scope of the leak. He does not allege that the sink was unusable or that he had no access to sufficient water to drink or wash his hands. Indeed, he alleges that another inmate struck him immediately after he used the sink. Nothing in Plaintiff's vague allegation that a sink leaked rises

9

to the level of depriving him of the minimal civilized measure of life's necessities. Thus, he fails to state a plausible conditions of confinement claim.

To the extent Plaintiff's allegations could be interpreted to include a failure to protect claim because in inmate "struck" him for using the sink, this too must fail for lack of specific facts. To prevail on a failure to protect claim, Plaintiff must establish: (1) he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) prison officials were "deliberately indifferent to inmate health or safety." *See Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted).

The first prong is an objective requirement to ensure the deprivation of a constitutional right is sufficiently serious. *Nelson v. Shuffman*, 603 F.3d 439, 446 (8th Cir. 2010). "The deprivation is objectively, sufficiently serious, under the first requirement when the official's failure to protect resulted in the inmate being incarcerated under conditions posing a substantial risk of serious harm." *Id*. (cleaned up).

The second prong, however, is subjective, requiring Plaintiff to show the named official "both knew of and disregarded 'an excessive risk to inmate's health or safety.'" *Holden*, 663 F.3d at 341 (quoting *Farmer*, 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007).

Here, Plaintiff makes no allegation that the inmate who struck him posed a known risk of serious harm to him. He provides no facts as to any injury that might have been sustained as the result of being struck. Nor does he allege that the named Defendants were aware that any inmate in the barracks posed a risk of serious harm. As such, Plaintiff fails to state a plausible failure to

10

protect claim. *See Martin v. Sargent*, 780 F.2d at 1337 (even a *pro se* plaintiff must still allege specific facts sufficient to support a claim).

### E. Claim Four – Denial of Meaningful Access to Courts

Plaintiff fails to state a plausible denial of meaningful access to courts claim based on needing more envelopes than the amount provided to indigent inmates. The Supreme Court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Lewis v. Casey*, 518 U.S. 343, 346 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817 (1997)). Nevertheless, the Supreme Court "did not create an abstract, freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351. Instead, prison officials must provide "some means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bear v. Fayram*, 650 F.3d 1120, 1123 (8th Cir. 2011) (internal quotations and citations omitted). These means may include but are not limited to prison libraries; jailhouse lawyers; private lawyers on contract with the prison; or some combination of these and other methods. *Id.*

An inmate cannot prevail on an access-to-courts claim unless he can demonstrate he suffered prejudice or actual injury because of the prison officials' conduct. *See Lewis*, 518 U.S. at 351-2; *see also Farver v. Vilches*, 155 F.3d 978, 979-80 (8th Cir. 1998) (per curiam); *Klinger v. Dep't of Corr.*, 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic); *McMaster v. Pung*, 984 F.2d 948, 953 (8th Cir. 1993). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity

to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.'" *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) (internal quotation and citations omitted).

Here, Plaintiff has not alleged that he suffered from any prejudice or actual injury to any of his legal cases because of an envelope limit. Instead, as he notes in his Complaint, he has successfully filed two cases in this District to date.

### IV.     CONCLUSION

For these reasons, it is recommended that: (1) the case be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; (2) Plaintiff is warned that, in the future, this dismissal may be counted as a strike for purposes of 28 U.S.C. § 1915(g) and thus, the Clerk is directed to place a § 1915(g) strike flag on the case for future judicial consideration; and (3) the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this dismissal would not be taken in good faith.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 26th day of July 2024.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE